UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DAKOTA LEE TURN,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>NIKOLAS LESLIE,<br><br>　　　　　　　Defendant. | Case No. 21-cv-12767<br>Honorable Laurie J. Michelson<br>Magistrate Judge Elizabeth A. Stafford |

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 59)**

### I.　Introduction

Plaintiff Dakota Lee Turn, a prisoner of the Michigan Department of Corrections (MDOC), filed this pro se civil rights action under 42 U.S.C. § 1983, alleging that Defendant Nikolas Leslie, an MDOC inspector, strip searched him in violation of the Fourth and Eighth Amendments and retaliated against him in violation of the First Amendment.  ECF No. 1.  The Honorable Laurie J. Michelson referred the case to the undersigned for all pretrial matters under 28 U.S.C. § 636(b)(1).  ECF No. 11.  Leslie moves for summary judgment.  ECF No. 59.  For the reasons below, the Court **RECOMMENDS** that the motion be **GRANTED**.

## II.     Background

In August 2020, four corrections officers escorted Turn to a private room for a strip search to document his tattoos. ECF No. 59-2, PageID.466. Turn fully undressed, and the officers used a camera to film his tattoos. *Id.*, PageID.466-467. Turn alleges that he was allowed to put his underwear and shorts back on before Leslie entered the room. *Id.*, PageID.467-469. Leslie allegedly began taking close-up photos of Turn's tattoos while another officer kept filming. *Id.*, PageID.468. Leslie then questioned Turn about other prisoners. *Id.* When Turn did not respond, Leslie threatened him with sanctions, which were never imposed. *Id.*, PageID.468, 471. Turn was allowed to dress and return to his unit, and he later filed grievances about the strip search. *Id.*, PageID.469-470; ECF No. 16-3, PageID.155-164. Leslie does not recall being present during the strip search or taking photos. ECF No. 67-1, PageID.545.

In October 2020, Turn and his bunkmate, Clint Smith, were strip searched in different rooms. ECF No. 59-2, PageID.473. Turn fully undressed, provided a urine sample for a drug test, and was permitted to get dressed. *Id.*, PageID.473-474. Leslie was not in the room during the strip search, and Turn does not know whether Leslie ordered the search. *Id.*, PageID.473-474, 477. But Leslie allegedly confronted Smith when he

was about to be searched and questioned him about Turn. *Id.*, PageID.476; ECF No. 1, PageID.36. Leslie denies that he was involved with the October strip search. ECF No. 67-1, PageID.546.

Turn claims that the August and October strip searches violated his Fourth and Eighth Amendment rights. ECF No. 59-2, PageID.469, 474. He also claims that he was strip searched in retaliation for his grievances against Leslie, in violation of the First Amendment. *Id.*, PageID.474.

### III. Analysis

**A.**

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must specify the portions of the record that show the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant

satisfies this burden, the burden shifts to the non-moving party to go beyond the pleadings and set forth specific facts showing a genuine issue for trial. *Id.* at 324. The Court must view the factual evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The opposing party "may not rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. Caresource*, 576 F.3d 551, 558 (6th Cir. 2009) (cleaned up). "[T]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion." *Id.* (cleaned up). "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Id.* at 560.

**B.**

The Court first addresses Turn's Fourth Amendment claims. The Fourth Amendment protects against unreasonable searches and seizures of one's person. U.S. Const. amend. IV. Courts recognize that inmates retain a limited expectation of bodily privacy under the Fourth Amendment. *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 572 n.2 (6th Cir. 2013).

A strip search is "an extreme intrusion upon personal privacy," and "the act of a stranger examining the most private areas of one's body is an offense to the dignity of the individual that is undoubtedly humiliating and deeply offensive to many." *Sumpter v. Wayne Cnty.*, 868 F.3d 473, 483 (6th Cir. 2017) (cleaned up).

To determine whether a strip search of an inmate is constitutional, courts must "balance the nature of the intrusion against the need for the particular search, though in the corrections setting we afford deference in favor of correctional officials' penological expertise and interests." *Id.* at 480. Courts weigh three elements: (1) "the scope, manner, and location of the search"; (2) "the need for the search, giving due deference to the correctional officer's exercise of her discretionary functions"; and (3) "whether the search was reasonably related to legitimate penological interests by weighing the need against the invasion." *Id.* at 482 (cleaned up). The Court evaluates the August and October strip searches in turn.

### 1.

A strip search can be unconstitutionally intrusive when it is conducted in front of other inmates or bystanders or is conducted in a discourteous manner. *Id.* at 483. But the scope, manner, and location of the August strip search were not unreasonably intrusive. The search took place in a

private, windowless room with the door shut.  ECF No. 59-2, PageID.469.  Although there was a window on the door, Turn admits that no one was looking inside.  *Id.*  Turn was ordered to undress, lift his genitalia, and bend over, and was then told he could put his underwear and shorts back on.  *Id.*, PageID.467.  Four male corrections officers were in the room when Turn was completely nude, and none of the officers touched Turn.  *Id.*

The officers began filming Turn's tattoos, and Leslie entered the room only after Turn had his underwear and shorts back on.  *Id.*, PageID.467-468.  Leslie took photos of Turn on his cell phone, told Turn to turn in different angles, and pointed to his phone and said to another officer, "See? See this?"  *Id.*, PageID.468.  Turn agrees that Leslie could have been pointing at his tattoos.  *Id.*  And Turn admits that Leslie never touched him or told him to remove any clothing.  *Id.*, PageID.468-469.  Nor does Turn assert that the search was unreasonably lengthy.

The search was also necessary and reasonably related to the legitimate penological interest of documenting Turn's tattoos.  *Id.*, PageID.466.  Leslie states that "documentation of prisoner tattoos is necessary for identification purposes of prisoners related to, amongst other things, prisoners' possible gang affiliation within the prison facility."  ECF No. 67-1, PageID.545 (cleaned up).  And MDOC policy directive 04.04.113

provides that tattoos can identify prisoners as members of a security threat group (STG) and that staff must document evidence of STG activity. *Id.*, PageID.560-561. Turn does not dispute this evidence.

Courts have found that similar searches were reasonable under the Fourth Amendment. *See Stevenson v. Green*, No. 2:22-cv-217, 2023 WL 2661122, at *7 (W.D. Mich. Mar. 28, 2023) (one-time strip search performed in view of two corrections officers because the plaintiff was suspected to have contraband); *Hunter v. Palmer*, No. 1:17-cv-109, 2017 WL 1276762, at *10 (W.D. Mich. Apr. 6, 2017) (routine pat-down search of limited duration that did not require the plaintiff to expose his genitals); *Johnson v. City of Kalamazoo*, 124 F. Supp. 2d 1099, 1104 (W.D. Mich. 2000) (plaintiffs' outer clothing was removed as a suicide prevention measure, but they were allowed to wear their shirts and underwear and were not required to expose their genitals). The August strip search likewise did not offend the Fourth Amendment.

### 2.

The October strip search was performed by male corrections officers in a private room with a small window on the door. ECF No. 59-2, PageID.473-474. Turn could not recall how many officers performed the search, but Leslie was not in the room. *Id.*, PageID.473. The strip search

was part of routine procedure for performing the drug test.  ECF No. 67-1, PageID.545.  Turn contends that the officers lacked reasonable suspicion for the search and drug test because he has no history of substance abuse.  ECF No. 59-2, PageID.474, 476; ECF No. 72, PageID.586.  He is right that, under the Fourth Amendment, drug testing of prisoners must be reasonable.  *See Evans v. Vinson*, 427 F. App'x 437, 443-44 (6th Cir. 2011).  But the Court need not determine whether the October drug testing of Turn that prompted the strip search was reasonable because he fails to show Leslie's personal involvement in the October strip search and drug testing.

To succeed in a § 1983 claim, a plaintiff must show "that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also Pineda v. Hamilton Cnty., Ohio*, 977 F.3d 483, 490 (6th Cir. 2020) (each defendant must be personally involved in the unconstitutional action).  Proximity to the wrongdoer does not convey responsibility.  *Pineda*, 977 F.3d at 490.  Failure to show with particularity what *each* defendant did to violate the asserted constitutional right, is not enough.  *See Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011)).

Leslie says that he was not present during the strip search and does not recall ordering it to take place. ECF No. 67-1, PageID.546. Turn confirms that Leslie was not in the room during the strip search and that he had no contact with Leslie that day. ECF No. 59-2, PageID.473-474. Turn also admits that he did not know whether Leslie ordered the search. *Id.*, PageID.473, 476-477. Turn suggests that that Leslie was involved because he questioned Smith about Turn's gang affiliations and activities in their shared cell before Smith's strip search. *Id.*, PageID.475-476; ECF No. 1, PageID.36. But Smith did not state that Leslie ordered or participated in the strip searches. *Id.* Thus, Turn has not shown that Leslie took part in the October strip search.

Leslie is entitled to summary judgment on Turn's Fourth Amendment claims.

## C.

The Court next addresses Turn's Eighth Amendment claims. The Eighth Amendment protects against the infliction of "cruel and unusual punishments" that involve "the unnecessary and wanton infliction of pain." U.S. Const. amend. VIII; *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (cleaned up). That protection extends to punishments that are "totally

without penological justification." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (cleaned up).

To prove an Eighth Amendment claim, a plaintiff must show objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component requires that the deprivation be "sufficiently serious," and the subjective component requires that the involved prison official had a "sufficiently culpable state of mind." *Id*. (cleaned up). In evaluating whether a strip search violates the Eighth Amendment, the "principal inquiry" is whether the search served a legitimate purpose or was performed "maliciously and sadistically to cause harm." *Fugate v. Erdos*, No. 21-4025, 2022 WL 3536295, at *13 (6th Cir. Aug. 18, 2022).

Turn cannot satisfy the objective component. Although sexual abuse of prisoners can violate the Eighth Amendment, "isolated, brief, and not severe instances of sexual harassment do not give rise to Eighth Amendment violations." *Rafferty v. Trumbull Cnty., Ohio*, 915 F.3d 1087, 1095 (6th Cir. 2019) (cleaned up). The two strip searches at issue were isolated, brief incidents that were performed in a private space and not in a demeaning manner. *See Lee v. Winn*, No. 20-12480, 2023 WL 8264524, at *2 (E.D. Mich. Oct. 25, 2023) (a brief, one-time body cavity search performed to investigate a suspected threat against another inmate did not

10

violate the Eighth Amendment). Summary judgment is proper on Turn's Eighth Amendment claims.[1]

### D.

Last, the Court evaluates Turn's retaliation claim. To succeed on that claim, Turn must show that: (1) he was engaged in conduct protected by the First Amendment; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that protected conduct; and (3) "there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by [Turn's] protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). The Sixth Circuit imposes a "high burden" for the third factor; there must be some evidence of retaliatory motive, and conclusory allegations are insufficient. *Hill v. Lappin*, 630 F.3d 468, 475-76 (6th Cir. 2010). If the plaintiff proves those three factors, the burden shifts to the defendant; if he "can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Thaddeus-X*, 175 F.3d at 399.

---

[1] The Eighth Amendment claim arising from the October strip search also fails because Turn cannot show Leslie's personal involvement in that search.

Turn claims that Leslie retaliated against him for filing grievances after the August strip search. ECF No. 59-2, PageID.474, 478; *see also* ECF No. 16-3, PageID.155-164. And Turn asserts that the October strip search and questioning of Smith were adverse actions. ECF No. 59-2, PageID.475.[2]

Turn cannot show that questioning Smith was an adverse action. "While the adverse action inquiry is ordinarily a question of fact for the jury, some adverse actions are so *de minimis* that they fail to state a retaliation claim as a matter of law." *Titlow v. Corr. Med. Servs., Inc.*, 654 F. Supp. 2d 651, 656 (E.D. Mich. 2009) (citing *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002)) (cleaned up). That is, "when the alleged adverse action is inconsequential, resulting in nothing more than a de minimis injury, the claim is properly dismissed as a matter of law." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583-84 (6th Cir. 2012) (cleaned up).

Turn does not claim that Leslie's questioning caused him any harm or that he feared any negative consequences, such as a misconduct charge,

---

[2] Turn does not claim that the August strip search was retaliatory. ECF No. 59-2, PageID.478. But he asserts other adverse actions like rejecting and tampering with his mail and being harassed by other staff members. ECF No. 59-2, PageID.475. As previously held, Turn only exhausted his retaliation claims stemming from the October strip search and questioning of Smith. *See* ECF No. 36, PageID.298-300; ECF No. 42.

12

a hearing, or discipline. Without any negative impact, Turn cannot show that Leslie's questioning of Smith was an adverse action. *See, e.g.*, *Dixon v. Pratt*, No. 1:14-cv-991, 2016 WL 11262505, at *2 (W.D. Mich. Oct. 17, 2016), *adopted*, 2017 WL 191433 (W.D. Mich. Jan. 18, 2017) (no adverse action when a disciplinary charge is withdrawn before any action is taken); *Short v. Kelly*, No. 13-13246, 2014 WL 4755948, at *5-6 (E.D. Mich. July 23, 2014), *adopted in relevant part*, 2014 WL 4771924 (E.D. Mich. Sept. 24, 2014) (soliciting other inmates to attack the plaintiff was not an adverse action when no assault occurred).

Nor can Turn show a causal connection between the grievances and the October strip search. As discussed, Turn admits that Leslie was not present during the strip search or drug test and that he does not know whether Leslie ordered them to take place. ECF No. 59-2, PageID.473-474, 476-477. And Smith's declaration that Leslie questioned him does not show that Leslie took part in the October strip search or that he sought to retaliate against Turn. *See* ECF No. 1, PageID.36. Thus, Turn has offered no evidence showing that Leslie took part in the October strip search and drug test, let alone that they were performed in retaliation for filing grievances.

13

## IV. Conclusion

The Court thus **RECOMMENDS** that Leslie's motion for summary judgment be **GRANTED** (ECF No. 59).

s/Elizabeth A. Stafford  
ELIZABETH A. STAFFORD  
United States Magistrate Judge

Dated: February 5, 2024

### NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party fails to timely file specific objections, any further appeal is waived. *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991). And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains. Within 14 days after service of

objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections lack merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 5, 2024.

                                                s/Marlena Williams
                                                MARLENA WILLIAMS
                                                Case Manager